UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:	Chapter 7

Joshua Aaron Newberry,	Case No. 19-30726-jda

                Debtor.	Hon. Joel D. Applebaum
_____/

**OPINION GRANTING DEBTOR'S MOTION TO HOLD
RPM AUTO SALES, INC. IN CONTEMPT OF COURT FOR VIOLATION OF
<u>THE AUTOMATIC STAY</u>**

The matter before the Court is Debtor's motion to hold RPM Auto Sales, Inc. in contempt for violating the automatic stay by retaining funds received from the garnishment of Debtor's state tax refund. For the reasons set forth below, this Court GRANTS Debtor's motion for contempt for violation of the automatic stay and for actual damages. Debtor has fifteen days to submit support for his request for actual costs under § 362(k) of the Bankruptcy Code.

**Jurisdiction**

This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O), over which this Court has jurisdiction pursuant to 28 U.S.C. § 1334. An order awarding damages under § 362(k)(1) of the Bankruptcy Code is a final order. *See In re Webb*, 2012 WL 2329051 at *5 (6th Cir. BAP Apr. 9, 2012). "[B]ecause '[a] claim under § 362(k)(1) for an automatic stay violation ... derives directly from the Bankruptcy Code' and 'necessarily stems from the bankruptcy itself,' the Court has the constitutional authority to enter a final order in this matter after *Stern v. Marshall*, 564 U.S. 462 (2011)." *In re Johnson*, 580 B.R. 766, 769 (Bankr. S.D. Ohio 2018) (internal citations omitted).

## Factual Background

The facts of this case are uncontested. On July 23, 2018, RPM filed a Request and Writ for Garnishment (Income Tax Refund/Credit) (the "Writ") against Debtor in the District Court for the 73A Judicial District located in Sandusky, Michigan. The district court issued the Writ on July 31, 2018. In the portion of the Writ addressed "**TO THE DEFENDANT**," the Writ states:

> You have **14 days** after being notified of an intercept to file objections to the writ of garnishment with the court. If you do not object within this time, the intercepted tax refund or credit held under this writ will be applied to the judgment **28 days** after the disclosure was filed with the court. (emphasis in original)

On November 1, 2018, the Writ was served on both the State of Michigan and Debtor. Sometime prior to March 5, 2019, Debtor filed his 2018 State of Michigan Income Tax Return and, on March 5, 2019, the Michigan Department of Treasury issued its Garnishment Disclosure, serving both RPM and Debtor. The Garnishment Disclosure stated that Debtor's 2018 State of Michigan income tax refund in the amount of $665.43 would be sent to RPM care of its counsel in "28 days from the date of the Garnishment Disclosure" and, further, "[*I*]*f a* garnishment release, satisfaction of judgment, or *bankruptcy notice* (validated by the court) *is received in our office within the 28 days, we* [State of Michigan] *will issue a refund to the principal defendant or bankruptcy trustee* if there are no other debts to be paid." (emphasis added). The Garnishment Disclosure form did not indicate that the 14-day objection period had begun to run.

On March 26, 2019, after the expiration of the 14-day objection period but within the 28-day bankruptcy notice period, Debtor filed his voluntary petition under chapter 7 of the Bankruptcy Code. RPM was properly notified of Debtor's bankruptcy filing on that day.[1] On April 1, 2019,

---

[1] Debtor identified the tax refund on his Schedule A/B and claimed it as exempt property under § 522(b) of the Bankruptcy Code on Schedule C. No objections were filed to Debtor's claim of exemption. Debtor was subsequently granted a discharge on July 23, 2019.

RPM received a check from the Michigan Department of Treasury in the amount of $655.43 as a result of RPM's garnishment.

On at least one occasion, Debtor's counsel spoke with RPM's counsel and requested that the refund be turned over to Debtor. RPM refused counsel's request. On May 15, 2019, Debtor filed this Motion to Hold RPM Auto Sales, Inc. in Contempt of Court for Violation of the Automatic Stay on the grounds that RPM's acceptance of the tax refund, and its subsequent refusal to turn the money over to Debtor, constituted violations of the automatic stay. Debtor seeks the garnished funds, along with attorneys' fees and costs pursuant to 11 U.S.C. § 362(k)(1). Debtor is not seeking punitive damages in this case.

On June 5, 2019, RPM filed its response to Debtor's Motion, arguing that the tax refund was not property of Debtor or the bankruptcy estate and, therefore, RPM's retention of the funds could not be a stay violation. RPM also argues that the post-petition receipt of an income tax refund resulting exclusively from a pre-petition garnishment is not an act in violation of the automatic stay. A hearing on the motion was held on July 24, 2019, at which time the Court took the matter under advisement.

There are two issues now before the Court. First, did RPM violate the automatic stay when it received the tax refund and then refused to turn it over to Debtor and, second, if RPM violated the automatic stay, was the violation willful such that Debtor is entitled to an award of actual damages, including attorney's fees and costs, pursuant to § 362(k)(1) of the Bankruptcy Code. The Court has reviewed the excellent papers submitted by the parties and has had the opportunity to fully consider this matter. For the reasons explained below, the Court concludes that RPM did willfully violate the automatic stay and, therefore, Debtor's motion is GRANTED.

- 3 -

19-30726-jda    Doc 36    Filed 08/09/19    Entered 08/09/19 13:46:41    Page 3 of 13

## Legal Analysis

The automatic stay goes into effect immediately upon the filing of a bankruptcy petition, prohibiting certain actions against the debtor or property of the bankruptcy estate. It is considered "one of the fundamental debtor protections provided by the bankruptcy laws." *Midlantic Nat'l Bank v. New Jersey Dep't of Envtl. Prot.*, 474 U.S. 494, 503 (1986). The automatic stay is designed to provide blanket relief from creditor action once the bankruptcy case has commenced to provide breathing space so that the debtor may reorganize his or her affairs. *In re Banks*, 253 B.R. 25, 29 (Bankr. E.D. Mich. 2000). The protections provided by the automatic stay are set forth in 11 U.S.C. § 362(a), which provides in pertinent part:

> (a) [A] petition filed under section 301, 302, or 303 of this title ... operates as a stay, applicable to all entities, of-
>
> > (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor ...;
> >
> > (2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;
> >
> > (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;
> >
> > (4) any act to create, perfect, or enforce any lien against property of the estate; [and]
> >
> > (5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title[.]

The automatic stay also protects against actions against the debtor or property of the debtor. As used in § 362(a), the "stay protects exempt assets that cease to be property of the estate and assets acquired after the commencement of a case . . .," 3 *Collier on Bankruptcy* ¶ 362.03[4] (Richard Levin & Henry J. Sommers eds., 16th ed.) and "property acquired by an individual debtor after the

- 4 -

19-30726-jda    Doc 36    Filed 08/09/19    Entered 08/09/19 13:46:41    Page 4 of 13

date of the filing of the petition, exempt property, abandoned property, and property that does not become a part of the estate such as the debtor's beneficial interest in a spendthrift trust. The purpose of this stay is to prevent preferential treatment of certain creditors and circumvention of the discharge." *Id*. at ¶362.03[7].

Under § 541(a)(1), property of the estate includes "all or legal or equitable interests of the debtor in property as of the commencement of the case." "'[T]he term 'property' has been construed most generously and an interest is not outside its reach because it is novel or contingent or because enjoyment must be postponed'. . . . In fact, every conceivable interest of the debtor, future, nonpossessory, contingent, speculative, and derivative, is within the reach of § 541." *In re Yonikus*, 996 F.2d 866, 869 (7th Cir. 1993), *abrogated on other grounds by Law v. Siegel*, 571 U.S. 415 (2014). Even a bare possessory interest such as a tenancy at sufferance, is "an interest in real property within the scope of the estate in bankruptcy under section 541." *Convenient Food Mart No. 144, Inc. v. Convenient Ind. Of America, Inc. (In re Convenient Food Mart No. 144, Inc.)*, 968 F.2d 592, 594 (6th Cir. 1992) (internal citations omitted).

Although the issue of what property is included in the debtor's bankruptcy estate raises a federal question, a debtor's property rights are created and defined by state law. *Barnhill v. Johnson*, 503 U.S. 393, 398 (1992); *Corzin v. Fordu (In re Fordu)*, 201 F.3d 693, 700 (6th Cir. 1999). Here, the applicable state law is Mich. Comp. Laws §§ 600.4061 and 600.4061a, which address the procedures governing garnishments of state tax refunds.

Section 600.4061 sets out the procedures a plaintiff must follow in a garnishment proceeding in which the State of Michigan is the garnishee. Section 600.4061a, in turn, sets forth the obligations of the State as garnishee in responding to a properly served writ of garnishment. Under this section, barring a timely objection, the state treasurer is required to intercept a state tax

refund, calculate the amount available from the interception to satisfy all or part of the garnishment, file with the court and serve a garnishment disclosure upon the plaintiff and defendant, and either deposit the money into the court or pay it to plaintiff's attorney of record in the garnishment action. "Objections to the writ of garnishment of a tax refund must be filed with the court within 14 days after the date of service of the disclosure on the defendant." MCL § 600.4061a(2). It is undisputed that, in the present case, Debtor did not object to the writ of garnishment within 14 days after service of the Garnishment Disclosure on him. It is equally undisputed that the 14-day objection period expired prior the petition date.

The first question presented in this case is whether the tax refund was property of the estate or property of the debtor for purposes of § 362(a). Based on its review of the statutes, this Court finds that Debtor's failure to object to the writ of garnishment within the 14-day objection period in MCL § 600.4061a did not entirely divest Debtor of any interest in the tax refund at issue. The 14-day objection period contained in MCL § 600.4061a mirrors the 14-day objection period contained in Michigan Court Rule 3.101, the court rule governing garnishments generally.[2] Under MCR 3.101, it is a valid objection to a writ of garnishment that the "garnishment is precluded by the pendency of bankruptcy proceedings." MCR 3.101(K)(2)(b). More importantly, while objections to a writ of garnishment under this court rule "shall be filed within 14 days of the date of service of the writ on the defendant . . .," the rule explicitly recognizes that "*[o]bjections may be filed after the time provided in this subrule* but [late filed objections] do not suspend payment pursuant to subrule (J) unless ordered by the court." MCR 3.101(K)(1) (emphasis added). Similarly, the state-approved tax refund garnishment disclosure form states:

> *If a* garnishment release, satisfaction of judgment, or *bankruptcy notice* (validated by the court) *is received in our office within the 28 days, we* [State of Michigan]

---

[2] Section 600.4061a recognizes that "Michigan court rules that do not conflict with this section or section 4061 govern a garnishment in which the state is a garnishee." Mich. Comp. Laws § 600.4061a(7).

*will issue a refund to the principal defendant or bankruptcy trustee* if there are no other debts to be paid."

(Emphasis added). This language also contemplates a debtor/defendant's right to file objections or notices of bankruptcy beyond the 14-day objection period.

Because MCL § 600.4061a and MCR 3.101(K)(1) envision the possibility of an objection to a tax refund garnishment *after* the expiration of the 14-day objection period, the expiration of the 14-day objection period cannot give RPM an unconditional right to the tax refund or cause Debtor to lose all legal or equitable right in the tax refund. As such, the tax refund was property of the estate to which the automatic stay applied, and which was exempted by Debtor under § 522 of the Bankruptcy Code.

The Court also relies on two cases from this district -- *In re Manuel*, 2014 WL 7405471 (Bankr. E.D. Mich. December 24, 2014) and *In re McCall-Pruitt*, 281 B.R. 910 (Bankr. E.D. Mich. 2002) -- in support of its finding that RPM willfully violated the automatic stay. In *McCall-Pruitt*, the debtor argued that a creditor violated the automatic stay by accepting funds from the State of Michigan pursuant to a pre-petition income tax garnishment. In response, the creditor argued that, by virtue of its garnishment, it held a perfected pre-petition lien in the tax refund and, therefore, was entitled to retain the funds received. Alternatively, the creditor argued that it did not violate the stay because it took no post-petition action to collect a debt, but merely accepted the funds from the State. *Id.* at 911. While the court recognized that the creditor's security interest in the tax refund was perfected at the time that the writ of garnishment was served, the court found that whether the creditor held a perfected security interest in the tax refund irrelevant to the question of whether the automatic stay applied and was violated. Because the stay applies to all creditors, secured and unsecured alike, the court held that the creditor had an affirmative duty to halt or reverse any collection efforts commenced pre-petition upon receiving notice of the bankruptcy

filing, including releasing the garnishment at issue. *Id*. at 912. Understood in the court's ruling was a finding that the debtor or the estate had an interest in the tax refund that continued post-petition.[3]

In *Manuel*, the creditor refused to release a pending writ of garnishment of the debtor's anticipated Michigan state income tax refund and refused to release the funds which it received from the state treasurer post-petition. As in *McCall-Pruitt*, the creditor argued that it held a perfected pre-petition lien once the garnishment was served on the State of Michigan and, accordingly, it was not required to release the writ of garnishment or, once received, return the garnished funds to the debtor. Alternatively, the creditor argued that it should be permitted to hold the funds to preserve its lien and file a motion for relief from stay as the *McCall-Pruitt* court permitted the creditor to do in that case. Relying on *McCall-Pruitt*, the *Manuel* court concluded that, while the creditor may hold a perfected lien in the tax refund, that "is irrelevant to the question before the Court: did [the creditor] violate the automatic stay by accepting funds postpetition pursuant to a prepetition lien?" The court held that "the scope of the automatic stay encompasses more than property of the estate – it prohibits the continuation of actions or proceedings against property of the estate *or against the Debtor*." *Id*. at *1 (emphasis in original). Because the court found that the debtor retained an interest in the tax refund notwithstanding the creditor's lien, the court concluded that the creditor willfully violated the automatic stay and awarded damages, including punitive damages under § 362(k) of the Bankruptcy Code.[4]

---

[3] The *McCall-Pruitt* court did not order the creditor to immediately turn over the funds to the debtor. In order to preserve the creditor's ability to protect its lien, the court permitted the creditor to continue to hold the funds provided it sought relief from the automatic stay within 30 days. Moreover, despite finding that the creditor willfully violated the automatic stay, the court did not award actual damages or address § 362(k).

[4] The *Manuel* court did not address the creditor's alternative argument that it should be permitted to retain the refund and file a motion for relief from stay.

- 8 -

19-30726-jda    Doc 36    Filed 08/09/19    Entered 08/09/19 13:46:41    Page 8 of 13

In both *Manuel* and *McCall-Pruitt*, the creditors argued that their perfected liens somehow obviated the automatic stay, an argument rejected by both courts. The issue of whether the debtors were divested pre-petition of any interest in the tax refunds under the MCL 600.4061a was never raised in either case. Nevertheless, the courts correctly assumed that the debtors or their bankruptcy estates had a continuing post-petition interest in the tax refunds, an assumption this Court expressly adopts. Based on both the statutes and case law, this Court expressly finds that, at the time of the bankruptcy filing, the tax refund was property of the bankruptcy estate. Consequently, the automatic stay applied to the tax refund, and RPM's refusal to take steps to halt the garnishment or turn the refund over to Debtor constituted willful stay violations.

RPM raises two arguments in support of its position that the garnishment was not property of the estate. First, RPM argues here that Debtor lost all legal or equitable interest in the tax refund when he failed to object to the writ of garnishment within the applicable 14-day period; a period that expired prior to the petition date. According to RPM, because the tax refund was no longer property in which Debtor or the estate held an interest at the time of the bankruptcy filing, it was not property of the estate, and the automatic stay did not apply. RPM argues, therefore, that it was not required to turn the tax refund over to Debtor and the motion for contempt must be denied.

RPM relies on *Johnson v. Cach, LLC (In re Johnson)*, 2010 WL 5296944 (E.D. Mich. December 20, 2010), *vacated,* 2011 WL 7637217 (E.D. Mich. June 14, 2011) and *In re Marsland*, Case No. 16-30563, Dkt. No. 21 (Bankr. E.D. Mich. May 12, 2016), which relies on *Johnson*. In both *Johnson* and *Marsland*, the debtors sought to avoid writs of garnishment served upon the State of Michigan pursuant to § 522(f)(1) of the Bankruptcy Code which allows a debtor to avoid a judicial lien impairing a debtor's exemptions if certain requirements are met. One of the requirements is that "the debtor has an interest in the property." *Harville v. Morris (In re Harville)*,

63 B.R. 371, 372 (Bankr. W.D. Ky. 1986). In the *Johnson* case, upon which *Marsland* relies, the district court found that, because the debtor failed to object to the garnishment disclosure within the 14-day objection period set forth in MCL § 600.4061a, the debtor "lost all legal or equitable right to the $688 tax refund. Therefore, the refund was not part of the debtor's estate when she filed a voluntary petition for bankruptcy on May 19, 2010." *Johnson.* at *3. Because the district court held that the refund was not part of the debtor's estate, recourse to § 522 of the Bankruptcy Code was unavailable. The *Marsland* court recognized, however, that the filing of a timely objection may preserve an equitable interest in the refund.[5]

This court respectfully disagrees with the district court's conclusion. The language contained in MCL §§ 600.4061 and 4061a, MCR 3.101, and on the tax refund garnishment disclosure form contemplates a debtor/defendant's right to file objections or notices of bankruptcy beyond the 14-day objection period and, therefore, the expiration of the 14-day objection period cannot serve to give RPM "an unconditional right" to the tax refund or cause the Debtor to lose "all legal or equitable right" in the tax refund.

Moreover, if *Johnson* is correct, the pre-petition expiration of the 14-day objection period in MCR 3.101(K)(1) (which mirrors MCL § 600.4061a) would similarly cut off the "legal or equitable right" of a debtor in any garnished funds, not just tax refunds. This Court could find no support for such an unprecedented result. *See McCall-Pruitt*, 281 B.R. at 911 ("Courts have overwhelmingly and consistently held that a creditor's failure to halt collection proceedings after

---

[5] The *Johnson* and *Marsland* courts also noted that the loss of any legal or equitable interest did not mean that a transfer did not occur for the purposes of a possible preference action pursuant to §§ 522(h) and 547(b) of the Bankruptcy Code. *Johnson* at *3-4; *Marsland* at p.5, n.3.

a petition is filed violates the automatic stay.") It is equally unlikely that the district court would announce such a sweeping result in an unpublished opinion that it subsequently vacated.[6]

RPM's second argument is that the post-petition receipt of a tax refund resulting from a pre-petition garnishment is not an affirmative act that violates the automatic stay. This is an issue which continues to divide courts, not only in connection with tax refunds, c*ompare McCall- Pruitt,* with *Saults v. First Tennessee Bank (In re Saults)*, 293 B.R. 739 (Bankr. E.D. Tenn. 2002), but in other contexts as well. *Compare In re Fulton*, 926 F.3d 916 (7th Cir. 2019) with *WD Equipment, LLC v. Cowan (In re Cowen)*, 849 F.3d 943 (10th Cir. 2017) (disagreeing whether the refusal to return a vehicle seized or repossessed pre-petition constitutes a violation of the automatic stay). In this district, failing to halt a pre-petition garnishment or receiving funds post-petition and refusing to turn them over to the debtor constitute stay violations.

Having concluded that RPM violated the automatic stay by its refusal to unwind the tax garnishment and by refusing to turn over the garnished funds, the Court also finds that the stay violation was willful. *In re Banks*, 253 B.R. 25, 29 (Bankr. E.D. Mich. 2000) ("A party acts willfully by taking any action prohibited by § 362(a) after the party receives notice of the bankruptcy filing . . . . An intent to violate the stay is not necessary.") (internal citations omitted). A creditor's good faith belief that it had a right to the property is not relevant to whether the act was willful or whether damages should be imposed. *Id*. Here, it is undisputed that RPM received notice of the bankruptcy filing on the day the case was filed. Debtor's counsel subsequently called

---

[6] The district court's opinion was appealed to the United States Court of Appeals for the Sixth Circuit. While on appeal to the Sixth Circuit, the parties settled the underlying dispute contingent upon the district court agreeing to vacate its earlier opinion. To that end, the parties filed (i) a motion for an indicative ruling under F.R.Civ.P. 62.1 requesting the district court to confirm that it would vacate its ruling if the case were remanded to it, and (ii) a motion to vacate on the assumption that the Sixth Circuit would agree to remand the case back to the district court. The district court granted the motion for indicative ruling and, following remand, vacated its opinion. *See In re Johnson*, 2011 WL 7637217 (E.D. Mich. June 14, 2011).

RPM's counsel and they discussed recent case law. Nevertheless, RPM refused to turn over the refund to Debtor or seek appropriate relief from the Court.

"[A]n individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages. 11 U.S.C. § 362(k)(1). Although Debtor is not seeking punitive damages, he is seeking the turnover of the tax refund in the amount of $665.43, plus "excess costs of [sic] incurred by Debtor's Counsel in preparing, filing, and prosecuting this motion and for any other relief this Court finds to be just and warranted." Motion, Dkt. No. 14, at 3. This Court agrees that Debtor is entitled to recover actual damages, including costs and attorneys' fees.

## Conclusion

For the foregoing reasons, Debtor's Motion to Hold RPM Auto Sales, Inc. in Contempt of Court for Violation of the Automatic Stay is GRANTED. RPM is ordered to turn over the tax refund in the amount of $655.43 to Debtor within three business days of entry of the Order issued in connection with this Opinion. Although the Court finds that Debtor is entitled to recover his "excess costs," the amount of such "excess costs" is not set forth in or supported in the motion. Therefore, Debtor shall have 15 days from the date of the entry of this Opinion to file an affidavit with invoices and/or other appropriate attachments indicating the amount being sought under §362(k)(1), including the fees associated with preparing the affidavit. RPM shall then have 7 days after service of the affidavit to file specific written objections, if any, to the amount being sought. If no objections are filed, Debtor shall file a certificate of no objection and proposed order. In the event that objections are timely filed, the Court will schedule an expedited hearing on the issue of

damages. The costs associated with this hearing may, at the Court's discretion, be included in Debtor's damage request.[7]

Not for Publication

**Signed on August 09, 2019**



/s/ Joel D. Applebaum
Joel D. Applebaum
United States Bankruptcy Judge

---

[7] RPM's request, that the Court follow *McCall-Pruitt* and allow RPM to retain the tax refund provided it seeks stay relief within 30 days, is denied. The court in *McCall-Pruitt* does not explain why, in light of its finding of a willful stay violation, actual damages were not awarded. In this case, RPM had *at least* 45 days within which to seek adequate protection or stay relief before Debtor was forced to file the instant motion. Under the circumstances, the Court is unwilling to give RPM an additional 30 days to do what it should have done upon learning of the filing bankruptcy petition.